UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IRVIN HAWKINS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-4142** |
| **PAUL D. CONNICK, JR., DISTRICT ATTORNEY** | **SECTION "J"(1)** |

# REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, it is recommended that the instant petition for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.  STATE COURT PROCEDURAL BACKGROUND

The petitioner, Irvin Hawkins, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On November 3, 1997, Hawkins was charged by bill of information in Jefferson Parish with the forcible rape of his niece and aggravated crime against nature upon his niece.[3] The Louisiana Fifth Circuit Court of Appeal summarized the relevant facts of the case as follows:

> At trial, LL, the victim, testified that on September 8, 1997 she was sexually assaulted by her uncle, the defendant herein. LL was 18 years old at the time of the assault. She explained that at the time she was living with her grandmother and the defendant stayed at that residence on occasion. LL described the events of that night as follows: She was halfway asleep, when she heard her bedroom door close. She rolled over in bed to see the defendant standing behind her next to the wall. She asked the defendant, "What are you doing in here?" In response, the defendant grabbed her by her shoulders and pulled her off her bed onto the floor. When she was on her stomach, face down on the floor, the defendant sat on her. LL testified that while she was in this position, the defendant put something in her mouth "like a towel or something, wrapping it around [her] mouth," so she could not speak. While she could not identify the object the defendant tried to put in her mouth, the victim testified that the tied socks, later found in her room by the police, did not belong to her and were not in her room before the assault. The defendant tried to tie her hands behind her back as he took off her underwear and shorts. When she tried to get up, the defendant told her, "[i]f you don't stop or stay still, I'm going to stick it in." LL explained that she continued to fight and to try to get away from the defendant, as they tussled around the floor. When she was able to get the binding off her mouth, she began to yell and scream and tell him to stop. In response, the defendant put his hands over her mouth and then around her throat, as he "proceeded to squeeze [her] throat so [she] would stop screaming." She stopped screaming and yelling, when he strangled her. Then, the defendant moved her to the foot of her bed where he held her hands down and her legs open. While on top of her, he licked her vagina, as he said, "Oh, L." She started crying, screaming, and telling him to stop again. In response, the defendant again put his hands around her throat to stop her from screaming by choking her. Then, the defendant started to lick her vaginal area again and "feel[ ] on [her] breasts." She continued to fight the defendant, hitting him with objects within her reach, including a radio speaker and a Sega Genesis game. She testified that at one point she unsuccessfully tried to wrap an electrical cord around his neck. LL testified that at this point, the defendant masturbated, "playing with his penis with one hand," as he sat on top of her. After the defendant achieved an erection, he rubbed his penis against her vaginal area. She testified she felt the defendant gliding his penis through her vaginal area and "it felt like he was trying to put [his penis] inside of me." She agreed that the defendant had gone underneath or slightly inside her vagina. LL explained that she put her hand "down there" because she did not want the defendant to "put [his penis] in." LL testified that she began

---

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 9, Bill of Information, 11/3/97.

to pray and then the defendant got up, wiped her off with her own shirt, and then he went to the bathroom.

      LL testified that no one else was at the residence at the time of the attack. After defendant went into the bathroom, she called her mother on the telephone and told her, "Uncle Mack just raped me" referring to the defendant. LL testified that she called her boyfriend's mother who told her that they were on their way. LL testified at this point, the defendant called her name, and said, "It tastes good" and "You feel good." At that point, LL turned on the lights, put on the same shorts that she wore before she was assaulted, and proceeded to the front door. When she made it to the front door, the defendant pulled her away to prevent her from opening the door. She ran to the garage to try to get out of the house through the garage door. As she pulled on the metal rod that kept the garage door down, the defendant grabbed her from behind. She tried to hold onto the metal rod in the garage door, but the defendant was pulling her away, as he said, "What's wrong with you? What are you doing?" LL testified that she was able to escape and run to the front door again. She opened the front door and the gate, and then ran outside.

      LL testified that she was running toward her boyfriend's house, when she collapsed on the next street. Her boyfriend and his parents saw her, picked her up, and brought her to her boyfriend's house where her mother was waiting and police were called. She was given another pair of shorts to wear. The victim testified that she sustained bruises around her neck and to her legs, and cuts to both the inside and the outside of her mouth and her legs from fighting the defendant. She was taken to the hospital where a sexual assault examination was performed, and she was given medication. After the examination, she spoke to Sergeant Monie and gave him a taped statement.

State v. Hawkins, 968 So.2d 1082, 1084-86 (La. App. 5th Cir. 2007); State Record Volume 6 of 9, Louisiana Fifth Circuit Opinion, 06-KA-739, pp. 2-5, September 25, 2007.

After several competency hearings and periodic evaluations, a hearing was held May 6, 1999, at which time the state trial court found petitioner competent to proceed with trial.[4] The jury selection for trial began January 26, 2000, at which time Hawkins caused a disruptive outburst in front of the panel during voir dire.[5] The trial court declared a mistrial and set another competency hearing.[6]

---

[4] St. Rec. Vol. 6 of 9, Minute Entry, 5/6/99; St. Rec. Vol. 7 of 9, Hearing Transcript, 5/6/99; see, St. Rec. Vol. 1 of 9, Motion to Appoint Sanity Commission, 1/6/98; Order of Commitment, 8/5/98, Motion for Competency Hearing and for Presumption of Proceedings, 4/5/99; Trial Court Order, 4/5/99; St. Rec. Vol. 6 of 9, Minute Entry, 1/5/98, Minute Entry, 4/9/98; Minute Entry, 7/23/98; St. Rec. Vol. 7 of 9, Hearing Transcript, 4/9/98; Hearing Transcript, 7/23/98.

[5] St. Rec. Vol. 6 of 9, Trial Minutes, 1/26/00; St. Rec. Vol. 7 of 9, Trial Transcript, 1/26/00.

[6] St. Rec. Vol. 7 of 9, Trial Transcript, pp. 17-19, 25, 1/26/00; St. Rec. Vol. 1 of 9, Trial Court Order, 2/3/00.

At that hearing held March 30, 2000, Hawkins again was found competent to stand trial.[7] Almost one year later, on March 28, 2001, Hawkins withdrew his plea of not guilty and entered a plea of not guilty by reason of insanity.[8] As a result, the state trial court held another competency hearing on June 21, 2001, at which time Hawkins was deemed not competent to stand trial.[9]

Several months later, on September 27, 2001, Hawkins was deemed competent to stand trial.[10] The state trial court later held a hearing on November 5, 2001, to consider Hawkins's request to set a pretrial bond and to allow him to represent himself.[11] The court set bond at $500,000 and scheduled a psychiatric evaluation to determine his competence to represent himself. At the hearing held December 5, 2001, the court determined that he was not, nor was he competent to stand trial.[12]

After several trial continuances and competency evaluations, Hawkins was found competent to stand trial on August 10, 2005.[13] He was tried before a jury on August 23 through 25, 2005.[14]

---

[7]St. Rec. Vol. 6 of 9, Minute Entry, 3/30/00.

[8]St. Rec. Vol. 6 of 9, Minute Entry, 3/28/01; St. Rec. Vol. 7 of 9, Hearing Transcript, 3/28/01.

[9]St. Rec. Vol. 6 of 9, Minute Entry, 6/21/01; St. Rec. Vol. 7 of 9, Hearing Transcript, 6/21/01; see also, St. Rec. Vol. 2 of 9, Motion to Appoint Sanity Commission, 4/17/01.

[10]St. Rec. Vol. 6 of 9, Minute Entry, 9/27/01; St. Rec. Vol. 7 of 9, Hearing Transcript, 9/27/01.

[11]St. Rec. Vol. 6 of 9, Minute Entry, 11/5/01; St. Rec. Vol. 2 of 9, Motion to Permit Defendant to Waive Counsel and to Represent Himself, 11/5/01; Motion for Bond Inquiry, 11/5/01.

[12]St. Rec. Vol. 6 of 9, Minute Entry, 12/5/01; St. Rec. Vol. 2 of 9, Order of Commitment, 12/5/01.

[13]St. Rec. Vol. 6 of 9, Minute Entry, 8/10/05; St. Rec. Vol. 7 of 9, Hearing Transcript, 8/10/05; see also, St. Rec. Vol. 3 of 9, Motion to Appoint Sanity Commission, 3/25/03; Order of Commitment, 5/14/03; Motion for Status Conference, 1/30/04; Motion for Speedy Trial, 10/18/04; St. Rec. Vol. 5 of 9, Application for Sanity Commission, 6/31/05; St. Rec. Vol. 6 of 9, Minute Entry, 11/20/02; Minute Entry, 5/12/03; Minute Entry, 8/2/04; Minute Entry, 5/25/05; St. Rec. Vol. 7 of 9, Hearing Transcript, 11/20/02 (no page three); Hearing Transcript, 3/23/04; Hearing Transcript, 8/4/04; Hearing Transcript, 5/25/05.

[14]St. Rec. Vol. 6 of 9, Trial Minutes (2 pages), 8/23/05; Trial Minutes (2 pages), 8/24/05; Trial Minutes, 8/25/05; St. Rec. Vol. 7 of 9, Trial Transcript, 8/24/05; Trial Transcript, 8/25/05; St. Rec. Vol. 8 of 9, Trial Transcript (continued), 8/25/05.

On the morning of the third day of trial, Hawkins "made an outburst in open Court and requested to fire his attorney and go back to the correctional center."[15] After discussions with the court away from the jury, Hawkins was escorted out of the courtroom and sent back to the jail at his request. The court denied defense counsel's motion for a mistrial, proceeded with closing arguments, and charged the jury. The jury found Hawkins's guilty as charged of forcible rape and aggravated crime against nature.[16]

The state trial court sentenced Hawkins on March 21, 2006, to serve 40 years in prison for forcible rape and 15 years in prison for aggravated crime against nature.[17] The court ordered that the sentences be served consecutively and that the first two years of the forcible rape sentence be served without benefit of parole, probation, or suspension of sentence.[18] Prior to the reading of the sentence, the court again had Hawkins removed from the courtroom because of his continuing outbursts.[19] The court also denied the defense's motion for a new trial, set a return date for the appeal, and granted the request for appointed counsel on appeal.[20]

---

[15] St. Rec. Vol. 6 of 9, Trial Minutes, 8/25/05; St. Rec. Vol. 7 of 9, Trial Transcript, pp. 2-4, 8/25/05; St. Rec. Vol. 8 of 9, Trial Transcript (continued), pp. 5-8, 8/25/05.

[16] St. Rec. Vol. 6 of 9, Trial Minutes (2 pages), 8/23/05; Trial Minutes (2 pages), 8/24/05; Trial Minutes, 8/25/05; St. Rec. Vol. 5 of 9, Jury Verdict, 8/25/05; St. Rec. Vol. 7 of 9, Trial Transcript, 8/24/05; Trial Transcript, 8/25/05; St. Rec. Vol. 8 of 9, Trial Transcript (continued), 8/25/05.

[17] St. Rec. Vol. 5 of 9, Sentencing Minutes, 3/21/06; St. Rec. Vol. 8 of 9, Sentencing Transcript, 3/21/06. Prior to sentencing, the trial court held another competency hearing on March 10, 2006, and found Hawkins to be competent. St. Rec. Vol. 7 of 9, Hearing Transcript, 3/10/06.

[18] Id.

[19] Id.; St. Rec. Vol. 8 of 9, Sentencing Transcript, pp. 2-5, 3/21/06.

[20] Id.; St. Rec. Vol. 6 of 9, Motion for New Trial, 3/21/06; Motion for Appeal, 3/21/06; Trial Court Order, 3/21/06.

On April 17, 2006, Hawkins filed a pro se application for post-conviction relief alleging that he was denied his right to appeal and that he was denied effective assistance of counsel because his attorney did not move for an appeal.[21] The state trial court denied relief because counsel had timely moved for an appeal and for appointment of the Louisiana Appellate Project to represent Hawkins.[22]

On appeal, Hawkins's appointed counsel raised four grounds for relief:[23] (1) insufficient evidence to convict; (2) the state trial court erred in allowing the admission of hearsay testimony from the police officers related to the victim's statements; (3) the trial court erred in denying the mistrial request after his outburst resulted in his removal from trial; and (4) the sentence was excessive. Finding no merit to the claims, the Louisiana Fifth Circuit affirmed Hawkins's conviction and sentence on September 25, 2007.[24]

Hawkins's raised the same issues in his subsequent writ application to the Louisiana Supreme Court, which was denied without reasons on April 18, 2008.[25] His conviction became final 90 days later, on July 17, 2008, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[21]St. Rec. Vol. 5 of 9, Uniform Application for Post-Conviction Relief, 4/17/06.

[22]St. Rec. Vol. 5 of 9, Trial Court Order, 8/7/06; St. Rec. Vol. 6 of 9, Motion for Appeal, 3/21/06; Trial Court Order, 3/21/06.

[23]St. Rec. Vol. 8 of 9, Appeal Brief, 2006-KA-0739, 5/14/07.

[24]State v. Hawkins, 968 So.2d at 1082; St. Rec. Vol. 6 of 9, La. 5th Cir. Opinion, 06-KA-739, 9/25/07. The court remanded the matter only to provide him with notice of the sex offender registration requirements.

[25]State v. Hawkins, 978 So.2d 347 (La. 2008); St. Rec. Vol. 6 of 9, La. S. Ct. Letter, 2007-KO-2272, 11/28/07; St. Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 07-KO-2272, 11/28/07; La. S. Ct. Order, 2007-KO-2272, 4/18/08. Although the court's letter and the writ application indicate a postal meter date of "11/26/07," the envelope attached to the writ application clearly shows a postal meter date of October 26, 2007.

In the meantime, on June 9, 2008, Hawkins filed an application for post-conviction relief in the state trial court raising three grounds for relief:[26] (1) insufficient evidence to convict; (2) inadmissable hearsay evidence was presented at trial; and (3) ineffective assistance of counsel for failure to raise the petitioner's mental incompetence or challenge the excessive sentence. In his memorandum in support of the application, Hawkins also argued that his conviction was invalid because the verdict form was not signed, that the bill of information was improper in form and should have been quashed, that his trial was not timely held, and that his first trial counsel failed to investigate his competence and the lack of DNA evidence, and failed to secure transcripts of the early proceedings which would have proven his innocence on appeal.[27]

The state trial court denied relief because the insufficient evidence claim was procedurally barred under La. Code Crim. P. art. 930.4 as repetitive of a claim raised on appeal.[28] The court also barred review of the hearsay evidence claim citing La. Code Crim. P. art. 930.4 and art. 930.3.[29] The court also found that the ineffective assistance of counsel claim was without merit. Hawkins did not pursue state court review of this order.

---

[26]St. Rec. Vol. 4 of 9, Uniform Application for Post-Conviction Relief, 6/9/08.

[27]Id., attached Memorandum in Support.

[28]St. Rec. Vol. 4 of 9, Trial Court Order, 6/17/08. La. Code Crim. P. art. 930.4 provides for the dismissal of a post-conviction application if it: (A) raises claims fully litigated on appeal; (B) raises a claim which should have been raised pretrial or during trial; (C) raises a claim which should have been raised on appeal; (D) the application is a successive application which raises claims which are not new or different; or (E) the application is a successive application which raises new or different claims which should have been raised in a previous application.

[29]La. Code Crim. P. art. 930.3 states that post-conviction relief will not be granted unless: (1) the conviction was obtained in violation of the state or federal constitution; (2) the court exceeded its jurisdiction; (3) the conviction or sentence subjected him to double jeopardy; (4) the limitations on the institution of the prosecution had expired; (5) the statute creating the offense for which he was convicted and sentenced is unconstitutional; (6) the conviction or sentence constitute the ex post facto application of law in violation of the federal or state constitution; (7) the results of DNA testing performed proves by clear and convincing evidence that the petitioner is factually innocent of the crime.

## II. FEDERAL HABEAS PETITION

On August 12, 2008, Hawkins filed a petition for federal habeas corpus relief in which he raised two grounds for relief: (1) he "was a mentally ill man who rarely understood what he was doing or what was occurring around him;" and (2) insufficient evidence to convict.[30] The State filed a response in opposition to the petition alleging that Hawkins did not exhaust state court remedies on the first claim.[31]

## III. GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[32] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Hawkins's petition, which, for reasons discussed below, is deemed filed in a federal court on July 24, 2008.[33]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state

---

[30]Rec. Doc. No. 1, p.4.

[31]Rec. Doc. No. 9, p.9.

[32]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[33]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Hawkins's petition was filed in by the clerk of court on August 12, 2008. Hawkins dated his signature on the petition on July 24, 2008. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). In this case, the State has raised the defense that Hawkins failed to exhaust state court remedies as to his first claim.

IV.   EXHAUSTION REQUIREMENT

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." (emphasis added) Id., 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127

9

F.3d at 420). It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court. Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim). Thus, to have exhausted his claims in state court, Hawkins must have fairly presented the same claims and legal theories he urges in this federal court to the state courts through to the Louisiana Supreme Court.

The record shows that Hawkins has allowed the state courts one full round of review of his claim that the evidence was insufficient to support the conviction. Hawkins's first claim, however, was not previously raised to the state courts. The claim, as the State notes in its opposition response, does not specifically identify a particular constitutional error in the state proceedings or allege the violation of a constitutional right. Instead, Hawkins merely states that his mental illness kept him from understanding the state criminal proceeding. Under a broad reading, his claim suggests that he was not, or should not have been found to be, competent to stand trial. Hawkins has not raised this claim to any state court, including the state's highest court.[34] The claim was not among those raised or argued in his only application to the Louisiana Supreme Court.[35]

Hawkins, therefore, has failed to exhaust available state court remedies on both of the claims raised in this petition. See Whitehead, 157 F.3d at 387 (citing Nobles, 127 F.3d at 420). The record discloses no good cause for Hawkins's failure to exhaust, and the Court can find none in the record.

---

[34]To the extent Hawkins argued in his last application for post-conviction relief, filed June 9, 2008, that his counsel ignored his mental incompetence, this is not the same claim or legal basis for relief as that presented here. See St. Rec. Vol. 4 of 9, Uniform Application for Post-Conviction Relief, 6/9/08. Furthermore, Hawkins did not exhaust state court remedies of the trial court's denial of relief on that claim.

[35]As outlined above, Hawkins raised only four claims in that writ application: (1) insufficient evidence; (2) inadmissable hearsay evidence; (3) the trial court should have declared a mistrial after his outburst on the last day of trial; and (4) the sentence was excessive. St. Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 07-KO-2272, 11/28/07.

Rhines v. Weber, 544 U.S. 269, 278 (2005). This mixed petition, presenting both an exhausted and unexhausted claim, is subject to dismissal without prejudice to require Hawkins to exhaust available state court remedies. Pliler v. Ford, 542 U.S. 225, 233 (2004) (quoting Rose, 455 U.S. at 510); Whitehead, 157 F.3d at 387.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of Irvin Hawkins for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __19th__ day of February, 2009.

                                    SALLY SHUSHAN
                              UNITED STATES MAGISTRATE JUDGE